# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEANGELO SANDERS, #06788-025,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-1249-SMY |
| ) | |
| **WARDEN,** *FCI-Jesup, Georgia*, ) | |
| ) | |
| **Respondent.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner DeAngelo Sanders, an inmate in the Bureau of Prisons, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241 on November 15, 2016. (Doc. 1). Sanders was convicted of possession of an unregistered firearm[1] and possession of a firearm by a felon[2] following a jury trial in this District in 2006. *United States v. DeAngelo Sanders*, No. 05-cr-30200-MJR, Docs. 104, 105 (S.D. Ill. October 16, 2006). He was sentenced to a term of 295 months imprisonment (*Id.* at Doc. 127, p. 2) and is now in custody at the Federal Correctional Institution at Jesup, Georgia ("FCI-Jesup").[3]

---

[1] 26 U.S.C. § 5845 (2005); 26 U.S.C. § 5861(d) (2005); 26 U.S.C. § 5871 (2005).
[2] 18 U.S.C. § 922(g)(1) (2005).
[3] Sanders was housed at the Federal Correctional Institution at Greenville, IL at the time his Petition was filed, (Doc. 1), but was transferred to FCI Jesup during the pendency of this action. (Doc. 21). Because Sanders was detained within this District at the time he filed his Petition, this Court retains jurisdiction to resolve this matter even after Sanders' transfer to FCI Jesup. *See Rumsfeld v. Padilla*, 542 U.S. 426, 440-41 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."). The Court's jurisdiction is "in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court." *Id.* at 441 n. 14; *see also United States ex rel Circella v. Sahli*, 216 F.2d 33, 37 (7th Cir. 1954).

Sanders' sentence was enhanced pursuant to the Armed Career Criminal Act ("ACCA") based in part on a prior Illinois felony conviction; namely, a 1992 residential burglary conviction pursuant to ILL. REV. STAT. Ch. 38 ¶ 19-3 (1985) and ILL. REV. STAT. Ch. 38 ¶ 2-6 (1987).[4] 18 U.S.C. § 924(e)(2)(B)(ii). Sanders now invokes *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016) to challenge the enhancement and asserts that he is entitled to be resentenced without the ACCA enhancement. Specifically, Sanders argues that the definition of "dwelling" contained in Illinois' residential burglary statute includes "house[s], apartment[s], mobile home[s], trailer[s], and other living quarters," which criminalizes more conduct than the "generic" definition of burglary as defined by the Supreme Court. (Doc. 1-1, p. 4; Doc. 15, pp. 2–4). Sanders also argues that the 1992 residential burglary conviction cannot be used as a predicate for his ACCA enhancement because his civil rights were restored to him via letter from the Illinois Department of Corrections ("IDOC") following his discharge from IDOC's custody in 1994 and parole in 1996. (Doc. 26, pp. 2–3).

Respondent opposes issuance of the writ, arguing that while Illinois residential burglary does criminalize conduct involving several "types of locations that individuals might consider the sanctuary of their home," that does not in itself make it broader than generic burglary, which, as defined by the Supreme Court, criminalizes certain conduct relating to "building[s] or other structure[s]." (Doc. 12, pp. 8–11). Respondent also argues that Sanders has failed to meet his burden to establish the existence and contents of the alleged restoration of rights letter, let alone that Sanders actually received such a letter and was misled by it. (Doc. 27, pp. 6–8). Sanders filed

---

[4] The current versions of these statutes can be found at 720 ILCS 5/19-3 (2019) and 720 ILCS 5/2-6 (2019), respectively. However, because changes to these statutes since Sanders' 1992 conviction are irrelevant to the instant Petition, *see Smith v. United States*, 877 F.3d 720, 722 (7th Cir. 2017) ("This is how [the Illinois Residential Burglary] statute read [at the time of the petitioner's conviction]; changes since then are irrelevant for the purpose of § 924(e) [of the ACCA]."), the current versions of these statutes will not be discussed further in this Order.

a Reply (Doc. 15) and the parties submitted several additional briefs that included supplemental authority. (Docs. 16, 26, 27, 28, 29, 34). This matter is now ripe for resolution. For the reasons discussed below, Sanders' Section 2241 Petition (Doc. 1) will be **DENIED**.

## Relevant Facts and Procedural History

Sanders was found guilty on one Count of Felon in Possession of a Firearm pursuant to 18 U.S.C. § 922(g)(1) on October 16, 2006.[5] *United States v. Sanders*, No. 05-cr-30200-MJR. The Presentence Report ("PSR") listed three prior felony convictions that qualified Sanders as an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4; a 1992 Illinois Residential Burglary conviction and 1999 and 2002 Illinois Aggravated Battery convictions. (Doc. 13, p. 7). Sanders does not dispute that the Aggravated Battery convictions were properly categorized as "violent felonies" under 18 U.S.C. § 924(e). He did not object to that portion of the PSR, and was he sentenced to 295 months imprisonment on January 19, 2007. *United States v. Sanders*, No. 05-cr-30200-MJR, Docs. 117, 118, 127 (S.D. Ill. Jan. 19, 2007).

### Direct Appeal and First Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2255

On direct appeal, Sanders argued that there was insufficient evidence to support his conviction, that the court erred in responding to a question from the jury during deliberations, and that the court erred in sentencing him to a greater term of imprisonment than the mandatory minimum sentence imposed by the ACCA. *United States v. Sanders*, 520 F.3d 699 (7th Cir. 2008). However, Sanders did not appeal the court's determination that his prior felony convictions, including the residential burglary conviction presently at issue, qualified him for a mandatory 15-year minimum sentence under the ACCA. *Id.* at pp. 699–703. The Seventh Circuit Court of Appeals upheld Sanders' conviction and sentence in their entirety. *Id.* at p. 703.

---

[5] Sanders' conviction of unlawful possession of an unregistered firearm, 26 USC § 5861(d), is irrelevant to Sanders' Petition and this Order and will not be discussed further.

Sanders filed a motion under 28 U.S.C. § 2255 in this District in March 2009. *Sanders v. United States*, No. 09-cv-0182-MJR, Doc. 1 (S.D. Ill. March 6, 2009). At that time he asserted, among other things, that his counsel provided ineffective representation both at trial and during his sentencing. *Id*. at Doc. 10, pp. 8–16. Sanders' objection to his representation during sentencing focused entirely on his claims that counsel failed to effectively argue for a downward departure under the sentencing guidelines (*Id.* at p. 13) and did not address the sentencing court's finding that he was subject to the ACCA's 15-year mandatory minimum sentence due to his prior felony convictions. *Id*. at pp. 1–17. The motion was denied in all respects. *Id*. at pp. 16–17. The Seventh Circuit then denied Sanders' request for a certificate of appealability, finding that Sanders failed to make a "substantial showing of the denial of a constitutional right." *Sanders v. United States*, No. 10-2302, Doc. 12 (7th Cir. October 5, 2010).

**Subsequent Applications for Authorization to File a Second or Successive Petition**

Starting in 2011, Sanders began filing applications for authorization to file a second or successive petition for collateral review with the Seventh Circuit. The first application was premised on alleged misrepresentations made by Sanders' trial attorney relating to a potential *Brady* motion about certain pieces of evidence at trial. *Sanders v. United States*, No. 11-1772, Doc. 1, p. 5 (7th Cir. April 1, 2011). Sanders did not make arguments relating to his status as an armed career criminal or his alleged restoration of rights relating to his 1992 residential burglary conviction. *Id*. This application was summarily dismissed. *Id*. at Doc. 2.

Sanders' second application argued that *Johnson v. United States*, - U.S. -, 135 S. Ct. 2551 (2015) invalidated his enhanced sentence under the ACCA. *Sanders v. United States*, No. 15-2875, Doc. 1 (7th Cir. August 31, 2015). Sanders again made no argument that his sentence enhancement was invalid because his residential burglary conviction did not fit the generic

4

definition of burglary in the ACCA. He did for the first time argue that he was "actual[ly] innocen[t]" of his ACCA enhancement because his "civil rights were restored by a restoration of rights letter for a residential burglary from 1992," but he neither developed that argument further in his application nor addressed it in his reply to the Government's response. *Id*. at pp. 5–6; *id*. at Doc. 5. The Seventh Circuit denied this application in all respects and specifically found that Sanders' sentence enhancement was not made pursuant to the ACCA's residual clause and that his prior convictions for aggravated battery and burglary were violent felonies as defined by the ACCA. *Id*. at Doc. 6, pp. 1–2 (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

Sanders' final application for authorization to file a successive § 2255 petition was filed on June 29, 2016. *Sanders v. United States*, No. 16-2822, Doc. 1 (7th Cir. June 29, 2016). Sanders again attempted to rely on *Johnson v. United States* to invalidate his ACCA enhanced sentence, but also argued that *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016) required the invalidation of the enhancement as well. *Id*. at p. 4. Sanders made no mention of his restoration of rights legal theory in this application. *Id*. The Seventh Circuit again denied Sanders' application, stating that "we concluded [in Sanders' previous application] that burglary in Illinois is equivalent to generic burglary," and noting that any argument Sanders wished to make under *Mathis* would have to be done via a petition under 28 U.S.C. § 2241. *Id*. at Doc. 7, pp. 1–2.

**Applicable Legal Standards**

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998). Aside from the direct appeal process, a § 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir.

5

2003). A prisoner is generally limited to *one* challenge of his conviction and sentence under § 2255. A prisoner may not file a "second or successive" § 2255 motion unless a panel of the appropriate court of appeals certifies that such motion either 1) contains newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) invokes "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Under very limited circumstances, however, it is possible for a prisoner to challenge his federal conviction or sentence under § 2241. 28 U.S.C. § 2255(e) contains a "savings clause" under which a federal prisoner can file a § 2241 petition when the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798-99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense."

Following *Davenport*, a petitioner must meet three conditions to trigger the savings clause. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that he relies on a decision that he could not have invoked in his first § 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). In other words, something more than a lack of success

with a § 2255 motion must exist before the savings clause is satisfied." *See Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

**Analysis**

Sanders' Petition cites both *Johnson v. United States,* – U.S. –, 135 S. Ct. 2551 (2015) and *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016) as separate bases for his requested relief, and also argues that the alleged existence of a restoration of rights letter relating to his 1992 residential burglary conviction invalidates that conviction as a predicate violent felony under the ACCA.

In *Johnson*, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." *Johnson,* 135 S. Ct. at 2563. *Johnson* announces a new rule of constitutional law, not a rule of statutory construction. *See Price v. United States,* 795 F.3d 731, 734 (7th Cir. 2015). To properly fit within the savings clause under *Davenport*, a petitioner's argument must rely upon a new rule of statutory construction. *Brown v. Caraway*, 719 F.3d at 586. Because *Johnson* announced a new rule of constitutional law, the holding of *Johnson* cannot be the basis for a Section 2241 petition. Thus, the proper avenue for Sanders to seek relief pursuant to *Johnson* is by filing a motion pursuant to Section 2255.

Normally, the Court would dismiss Sanders' Petition without prejudice with instructions to seek permission to file a successive Section 2255 motion with the Seventh Circuit in order to pursue his theory under *Johnson*. However, Sanders has already requested permission to do so twice and the Seventh Circuit denied both requests. The Seventh Circuit did not merely dismiss Sanders' requests as improper under Section 2255 – it did so after considering the merits of Sanders' multiple arguments that *Johnson* invalidated his classification as an armed career

criminal. *Sanders v. United States*, No. 16-2822, Doc. 7, pp. 1–2 (7th Cir. July 29, 2016). Sanders cannot use the instant § 2241 Petition to relitigate this issue. The fact that the Seventh Circuit has already dismissed his theory under *Johnson* under § 2255 does not render § 2255 inadequate or ineffective to test the legality of Sanders' detention. *See Roundtree v. Krueger*, 910 F.3d 312, 313 (7th Cir. 2018); *Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015) ("[S]omething more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied."). Accordingly, Sanders' requested relief, to the extent that it relies on *Johnson*, will be **DENIED** and **DISMISSED WITH PREJUDICE**.

Next, under *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), Sanders challenges the classification of his 1992 Illinois residential burglary conviction as a violent felony pursuant to the enumerated clause of the ACCA. 18 U.S.C. § 924(e)(2)(B)(ii) ("[T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . is **burglary**, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]") (emphasis added).

Sanders was convicted under Illinois' residential burglary statute in 1992 which at the time provided that "[a] person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." ILL. REV. STAT. Ch. 38 ¶ 19-3(a) (1985). The term "dwelling" was defined by another statute, which provided that "[f]or the purposes of Section 19-3 of this Code, 'dwelling' means a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." ILL. REV. STAT. Ch. 38 ¶ 2-6(b) (1987).

8

Citing *Mathis*, Sanders argues that Illinois' residential burglary statutes' definition of "dwelling" would criminalize the burglary of a "trailer or 'other living quarters' which could even include an automobile." (Doc. 1-1, p. 4). According to Sanders, this shows that the Illinois statute's locational element is broader than the "generic definition" of burglary as set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 598 (1990).[6] *Mathis* reaffirms longstanding Supreme Court precedent that began with *Taylor*, establishing that, in determining whether a prior crime counts as a predicate crime of violence for purposes of an ACCA sentencing enhancement, a court uses a "categorical approach," looking *not* to the facts of the prior crime but to the statutory elements of the prior conviction. *Mathis*, 136 S. Ct. at 2248. A prior crime qualifies as a predicate "if its elements are the same as, or narrower than, those of the generic offense." *Mathis*, 136 S. Ct. at 2247. *Mathis* holds that, if a statute is divisible (that is, it contains different elements, some of which would not qualify as crimes of violence) the court then uses a "modified categorical approach" which permits it to examine a limited set of documents to determine under which element the predicate crime occurred. *Mathis*, 136 S.Ct. at 2248.

When Sanders filed this Petition, the Seventh Circuit had not yet addressed whether the locational element of Illinois' residential burglary statute was broader or narrower than the generic definition of burglary as set forth by the Supreme Court, although it had indicated that residential burglary was properly considered as a predicate offense under the ACCA's enumerated clause. *See Dawkins v. United States*, 809 F.3d 953, 954 (7th Cir. 2016) ("[Illinois' r]esidential burglary [statute], however, . . . satisfies the ruling in *Taylor v. United States* . . . for purposes of a § 924(e) enhancement . . . ."). However, since that time, the Seventh Circuit has conclusively addressed

---

[6] The *Taylor* court defined the generic meaning of burglary to be "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id*. This is the generic definition of burglary analyzed in *Mathis*. 136 S. Ct. at 2248.

9

Sanders' argument that Illinois' definition of "dwelling" is broader than the generic definition of burglary.

In *Smith v. United States*, 877 F.3d 720 (7th Cir. 2017), the Seventh Circuit rejected this argument, and held that "[a] violation of 720 ILCS 5/19-3 is generic burglary for the purpose of [the ACCA] and similar federal recidivist statutes." 877 F.3d at 724. The defendant in *Smith*, like Sanders, argued that the statute's references to "trailers" and "other living quarters" could be interpreted to include houseboats, tents, or even cars, which would be broader than the generic "building or structure" locational element set forth in *Taylor* and its progeny. *Id*. However, the panel, after reviewing Illinois state courts' interpretation of the statute as well as the Supreme Court's jurisprudence on the issue through *Mathis*, concluded that the residential burglary statute's definition of "dwelling" does not cover the entry of vehicles, boats, or tents, unlike the non-residential burglary statute. *Id*. at 722–25. Noting that it was "unlikely that the Justices set out in *Taylor* to adopt a definition of generic burglary that is satisfied by no more than a handful of states—if by any," the panel concluded that Illinois residential burglary "is 'burglary' under [18 U.S.C.] § 924(e)(2)(B)(ii)." *Id*. at 725.

This Court is bound by the Seventh Circuit's decisions, and the Seventh Circuit in *Smith* specifically foreclosed Sanders' argument that the Illinois residential burglary statute in effect at the time of his 1992 conviction runs afoul of *Taylor* or *Mathis*. Accordingly, Sanders' requested relief, to the extent that it relies on *Mathis*' supposed invalidation of his residential burglary conviction as a predicate offense for his ACCA sentencing enhancement, is **DENIED** and will be **DISMISSED WITH PREJUDICE**.

Sanders' Petition invokes only *Johnson* and *Mathis* as the bases for his requested relief. However, in his reply brief and subsequent filings, Sanders presented an additional argument in

10

support of invalidating his ACCA sentence enhancement. Specifically, Sanders relies on *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) and *United States v. Burnett*, 641 F.3d 894 (7th Cir. 2011) for the proposition that his residential burglary conviction should not count as a predicate offense for his enhanced sentence because the "restoration of civil rights" letter that was allegedly generated by IDOC and sent to him when he completed his parole term did not inform him that he could no longer possess or use a firearm. (Doc. 23, pp. 2–3). Sanders has not provided a copy of the letter that was allegedly generated, nor does he indicate that he possesses (or ever possessed) such a letter. Instead, he has submitted evidence that he argues shows such a letter should have been automatically generated by IDOC and sent to him by his county's parole office after his discharge. Doc. 29, pp. 1–2; Doc. 34, pp. 5–21.

This Court cannot consider this theory unless it fits within the savings clause of 28 U.S.C. § 2255(e). A Section 2241 petition can only be used to attack a conviction or sentence when the Section 2255 remedies "is inadequate or ineffective to test the legality of [the prisoner's] detention." *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012). "'Inadequate or ineffective' means that 'a legal theory that **could not have been presented under § 2255** establishes the petitioner's actual innocence.'" *Id*. (citing *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002); *In re Davenport*, 147 F.3d 605, 608 (7th Cir. 1998)) (emphasis added). Sanders does not claim that he is innocent of the predicate residential burglary conviction, nor that he is innocent of the federal offense of being a felon in possession of a firearm. He argues instead that he is "actually innocent" of the armed career criminal sentencing enhancement, due to the alleged flaw in Illinois' notice restoring his civil rights.

Sanders' restoration of rights argument could have been raised on direct appeal, in Sanders' original Section 2255 motion, or in any of Sanders' subsequent applications for authorization to

file successive Section 2255 motions—*Buchmeier* was by no means the first reported case to present that theory. *See Dahler v. United States*, 259 F.3d 763 (7th Cir. 2001) (prisoner obtained reversal of sentence based on restoration of civil rights on a prior conviction, but could not bring successive Section 2255 motion raising alternative challenge to his sentencing enhancement where that challenge could have been raised in earlier proceeding). As the Seventh Circuit has observed, *Buchmeier* did not change the law regarding Sanders' restoration of civil rights theory in 2009, nor was its holding novel. *See Gillaum v. Cross*, No. 13-2364, Doc. 9, p. 2 (7th Cir. Sept. 6, 2013) ("*Buchmeier* applied a principle that has been around since 1990 . . . . Thus the argument that was successful in *Buchmeier* was not foreclosed by binding precedent during [the petitioner's] § 2255 proceeding, allowing adequate review.") (internal citations omitted).

Indeed, Sanders admits in his own pleadings that he has already tried, and failed, to advance this argument in a prior Section 2255 proceeding. (Doc. 23, p. 3) ("It should be noted that Petitioner tried to raise this very issue in [Sanders' prior] application seeking authorization to file a second or successive §2255 motion . . . and his application was denied."); *Sanders v. United States*, No. 15-2875, Doc. 6 (7th Cir. September 25, 2015). Sanders cannot use the instant Section 2241 petition to relitigate an issue that he already unsuccessfully raised in prior Section 2255 proceedings—the fact that the Seventh Circuit dismissed his restoration of rights theory in the Section 2255 context does not make Section 2255 inadequate or ineffective to test the legality of Sanders' detention. *See Roundtree v. Krueger*, 910 F.3d 312, 313 (7th Cir. 2018); *Webster*, 784 F.3d at 1136 (7th Cir. 2015) ("[S]omething more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied.").

In sum, a Section 2255 proceeding will be considered inadequate only if prior binding precedent had foreclosed a petitioner from bringing the argument in a Section 2255 motion. *Hill*,

695 F.3d at 648–49 (citing *Morales v. Bezy*, 499 F.3d 668 (7th Cir. 2007)). That is not the case here. Sanders' restoration of rights argument was not foreclosed before the Seventh Circuit issued the *Buchmeier* opinion, and his previous attempt to bring that argument in a Section 2255 motion failed. Therefore, Sanders cannot use Section 2241 as a vehicle for bringing his restoration of rights claim.

## Conclusion

For the foregoing reasons, Sanders' Petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1), is **DENIED**. This action is **DISMISSED WITH PREJUDICE**.

The Clerk of Court is **DIRECTED** to enter judgment accordingly and to provide a copy of this Memorandum and Order to the United States Attorney for this district.

If Petitioner wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Petitioner plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED: July 12, 2019**

<u>**s/ Staci M. Yandle**</u>
**STACI M. YANDLE**
**UNITED STATES DISTRICT JUDGE**